Kennon, J.,
delivered the opinion of the court
John Jeffers, owning two lots in the town of Mt. Vernon, devised the undivided half of them (subject to a life estate therein) to William Jeffers, his son. William Jeffers afterward mortgaged his interest, or a part thereof, to James C. Irwin, to secure the payment of money loaned by Ii’win. Subsequently the administrator of John Jeffers, deceased, petitioned the court of common pleas of Knox county for leave to sell a portion of these two lots (described by metes and bounds) to pay the debts of the deceased. The order of sale was made by the court, and sale made by the administrator to Irwin, the complainant; sale approved by the court, money paid by the purchasers, and deed executed and delivered to Irwin. On, or before the day of sale, William gave notice to Irwin not to bid at *390 the sale, that the order of sale was erroneous, and that the heirs of John Jeffers would attempt to have the order reversed. The order of sale was afterward reversed by the Supreme Court.
The original bill in this case was filed by Irwin, to foreclose the equity of redemption of William J effers of his interest in that part of the premises not sold by the administrator. William’s answer set out the fact of the sale of a portion of the lots to Irwin, the notice not to purchase, and *the subsequent reversal of the [390 order of sale; that Irwin had gone into possession of the premises so by him purchased from the administrator of John Jeffers, deceased, and received the rents and profits of the same, to an amount more than sufficient to pay the debt by him owing to Irwin. William claimed that by a reversal of the order of sale, Irwin’s title to that portion of the lots purchased from the administrator failed, and inasmuch as he, William, had by an agreement with his mother, who had a life estate therein, obtained the right of possession from her, Irwin was bound in law to account to William for the rents and profits received by Irwin while in possession under his purchase from the administrator. And of this opinion was the district court, which decreed'that Irwin should so account. This decree of the court finds, that by the reversal of the order of sale, Irwin’s title failed. The present, bill of review is filed for the purpose of reversing this decree. The only question, therefore, which this court finds it necessary to decide, is whether the reversal of an order of sale, made by the proper court after the sale is made, money paid, and deed duly executed, divests the purchaser of his title to the land.
If such sale had been made to a stranger to the record, on a judgment or decree, and such judgment or decree had been subsequently reversed, the purchaser would not be divested of his title : his right to the property would be saved by an express statutory provision. See Swan’s Stat. 680. This sale, however, was not made by execution on a judgment or decree, as these terms are generally understood, but the sale was made by an express order and adjudication of the court, and the case is clearly within the spirit and reason of the statute. There is as much reason to protect the purchaser upon a sale made by an administrator, as a purchaser under a sheriff’s sale, upon a judgment or decree. Public policy would seem to require that the title of the purchaser of real estate, made by the express directions of a court of competent jurisdiction, should be held *391, 392 391] *valid, even if the order should be subsequently reversed. Property would sell higher, there would be more competition among bidders, where it was known that the title would not be defeated by an error of the court, than where years after the purchase the order was, upon questions of law, liable to be reversed, and thereby the title to the land lost.
If the bidders wepe liable to lose title by the reversal, it would be a great clog upon sales. The reversal may take place long after •the purchaser has paid his money to the administrator, the administrator paid it out to creditors, and the estate settled. Under such circumstances, the purchaser might well doubt whether he would not only lose his land, but his money also, and might well make the inquiry, to whom shall I look for the money paid by me for the land ? Indeed, these sales are as much within the policy of our statute as those expressly provided for by its terms. But if we had no statute upon the subject, the common law would protect purchasers.
There is a case found in 3 Coke, 181, which he thus reports : Between Clement Hoe, executor of John Hoe, plaintiff, and Bolton, defendant. The case was such : John Hoe, the testator, had judgment to recover in the king’s bench, against Bolton, £75 3s. 4d. John Hoe assigned by deed enrolled to the queen, in satisfaction of a debt due to the queen by him, as collector of fifteenths, with proviso that if the lord treasurer and barons of the exchequer, or any two of them, because the debt could not be levied in convenient time, or for any other reasonable cause, disallowed of the said assignment and revoked it, by writing under their hands, then the assignment should be void. And afterward Bolton brought a writ of error according to the new statute, and then judgment was affirmed. And afterward (on process, which is called a writ of prerogative out of the exchequer, on said assignment), the lands of Bolton were extended, and the goods, which were of a value above the said debt so assigned, were seized by the sheriff, by force of said writ, but the writ was not returned. And afterward 392] *Periam, Ewens, and Southerton, three of the barons, revoked the assignment after the testator’s death, because the testator had satisfied the debt which was due to the queen by him as collector. And now the plaintiff, as executor of John Hoe, sued a scire facias to have execution of the £75 3s. 4d.; and the said matter being disclosed by special pleading, a demurrer in law was *393 joined. And in this case three points were resolved. 1. That the execution for the queen was good without question, although the writ was not returned; 2. It was resolved that after execution had by the queen, the revocation came too late, for then the queen had the effect and end of the assignment, and that which was ex-ecutory when assigned is now executed by lawful process of law,- and therefore can not be revoked; 3. And if one has a power of revocation, if he suffers anything to he lawfully executed by force of it, as to that, he can not make any revocation.” From this case, Coke argues and says: that if a sheriff by force of a fieri facias sell goods, and afterward the judgment is reversed by writ of error, the defendant shall not have restitution of his goods, but the value of them for which they were sold ; and the reason assigned by him is this: that if the sale by the sheriff by force of a fieri facias should be avoided by subsequent reversal of the judgment, there would he no buyer, and by consequence, no execution done. In a note to this case, it is said, that if the sheriff sell a term under a writ of fieri facias, which is afterward set aside and the produce of the sale directed to be returned to the termor, the termor can not maintain ejectment to recover his term against the vendee under the sheriff; and various authorities are cited in support of this position. .
A distinction, however, is made between the sale on a fieri facias to a stranger, and where the term is extended on an elegit. In the latter case, if the judgment be reversed, the term shall be restored, and the reason is that because in the case of an elegit, the delivery is made to the plaintiff himself; it is in law a bare delivery in specie, and ought to be returned in specie again, and doth not alien the property absolutely, *but attends on the execution to [393 be good or bad, as that is; but if there had been a sale by the sheriff to a stranger, it would have been otherwise.
In Manning’s case, 4 Coke, 335, the question arose as to the title-to a term sold on execution, and the judgment reversed afterward,' in which Coke says it was resolved that the sale by the sheriff by force of the fieri facias should stand, although the judgment was afterward reversed, and the plaintiff in the writ of error restored to the value; for the sheriff who made the sale had lawful authority to sell, and by the sale the vendee had absolute property in the' term during the life of Alice, the wife, and although the judgment which was the warrant of the fieri facias be afterward reversed-, yet *394 the sale, which was a collateral act, done by the sheriff by force of the fieri facias, shall .not be avoided, for the judgment was that the plaintiff should secure his debt, and the fieri facias is to levy it of the defendant’s goods and chattels, by force of which the sheriff sold the term which the defendant had in right of his wife, as he well might, and the vendee paid the value of it. And if the sale could be avoided, the vendee would lose his term and his money too, and thereupon great inconvenience would follow; that none would buy of the sheriff goods and chattels in such case, and execution of the judgment (which is the life of the law) would not be done. And according to that resolution, judgment was given in the common pleas, and in the King’s .Bench, upon writ of error. The case was after argued at the bar before Sir Christopher Wray, and the coui’t there ; and at length the judgment was affirmed, and so the ' point was acquiesced in by both courts; and Coke adds: “ And by these judgments you will better understand the law in the books.”
Now, although the decisions cited, and the reasons of Coke, apply fto personal property or terms for years, still they should, in this (Country, apply with the same force to real as personal property. 'They are both the subject of sale on execution, and subject to be •sold for the payment of the debts of a deceased person. It is 394] claimed, however, that the purchaser *had notice that there •was error in the order of sale, and therefore, he can not be regarded as an innocent purchaser without notice. We think the mere fact that the purchaser was notified not to purchase on account of the error in the order of sale makes no difference. The •order is binding until reversed, and the authority to sell as valid as •if no error had intervened. If notice of a real or supposed error in 'the proceedings would affect the purchaser’s title, the implied notice ■of the order or judgment upon which the sale took ]fiace would be :as effectual as actual notice, and every purchaser might bo presumed [to have knowledge of the record of the order or judgment, and of rfche errors therein, and in all cases would have to purchase at his peril. |
Upon the whole, therefore, we think that the - order of sale made by the court is a judgment within the meaning of the statute, and the title protected thereby, and that if no such statute existed, the ¿purchaser, by the principles of the common law, would take a good ititle, a title which could not and ought not to be affected by the rewersal of the order of sale.
The decree is reversed.